833 P.2d 1183

**Rudy LOPEZ and Dorothy Lopez as the natural parents and as the next friends of their son, Adam Lopez, an infant and incapacitated person, Plaintiff–Appellee,**

v.

**SOUTHWEST COMMUNITY HEALTH SERVICES, d/b/a Presbyterian Hospital, Defendant–Appellant.**

**No. 11543.**

Court of Appeals of New Mexico.

April 2, 1992.

Certiorari Denied May 13, 1992.

**4**

---

Louis S. Marjon, Law Offices of Louis Marjon, Albuquerque, Gerald E. Agnew, Agnew & Brusavich, Torrance, Cal., for plaintiff-appellee.

Kenneth L. Harrigan, J. Douglas Foster, Geoffrey D. Rieder, Tim L. Fields, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendant-appellant.

## OPINION

BIVINS, Judge.

This case involves a medical malpractice claim resulting from the premature birth of Adam Lopez, born May 27, 1982, after only twenty-eight weeks of gestation.[1] Because of his premature birth, Adam suffers severe physical and mental disabilities. Adam's parents, Rudy and Dorothy Lopez, brought this action, in their representative capacity, against the physician who delivered Adam and Southwest Community Health Services (Hospital), where Adam was born. In bifurcated proceedings which first considered liability, the jury found both Defendants liable, allocating 70% fault to the physician and 30% fault to Hospital. In the subsequent damages phase, the jury awarded substantial damages, apportioning

responsibility between Defendants in the same percentages. Defendants appealed; however, pending appeal Plaintiff and the physician settled. Therefore, we consider only the claims of error raised by Hospital.

Hospital claims that: (1) as a matter of law, its conduct was not a proximate cause of Adam's injuries; (2) it was denied a fair trial by improper and inflammatory arguments made by Plaintiff's counsel; (3) as a matter of law, Plaintiff could not recover future medical and non-medical expenses; and (4) Hospital was prejudiced by inadmissible evidence of insurance coverage. As to the proximate cause issue, we hold the jury could find that negligent conduct on the part of Hospital personnel influenced the physician's decision to deliver Adam when Dorothy was not in labor, notwithstanding the physician's pronouncements that Dorothy was in labor and that the decision to deliver was his alone. Also under the proximate cause question, we reject Hospital's argument that Plaintiff must prove that proper action by the physician or Hospital would have prevented premature delivery during the remainder of Dorothy's pregnancy. We do so on the basis that the jury could have found, and undoubtedly did find, that Dorothy was not in labor when the delivery was made. We decline to consider the claim of improper or inflammatory statements of counsel because no timely objection was made, and Hospital has not persuaded us that the principle of fundamental error should apply. With respect to recovery for future medical and non-medical expenses, a question of first impression, we hold that the cause of action to recover a minor's future medical and non-medical expenses belongs to both the minor and the parents, and that the minor can recover such expenses as long as there is no double recovery. Finally, with regard to the evidence of insurance, we hold that, under the circumstances of this case, counsel for Plaintiff could properly inquire into this matter for impeachment purposes since Defendants in-

---

**1.** A full term birth occurs between thirty-seven and forty weeks.

vited inquiry by putting before the jury their medical expert's affiliation with the insurance companies. Accordingly, we affirm the judgment against Hospital.

## I. PROXIMATE CAUSE

Hospital contends that the trial court should have directed a verdict in its favor because Plaintiff failed to establish that the conduct of its nurses proximately caused the physician's premature delivery of Adam. Hospital argues that Plaintiff failed to establish this element in two related ways. First, Hospital contends that the conduct of the nurses did not in fact cause the physician to deliver Adam; that "the only evidence was to the contrary and established that [the physician] alone made the decision ... based entirely on his own examination...." Second, Hospital claims that Plaintiff never proved that Adam's injuries would have been avoided had he been delivered *after* May 27. We discuss these aspects of proximate cause separately.

### A. *Was the Conduct of the Nurses a "Cause in Fact"*

In arguing that the hospital nurses did not cause the physician to deliver Adam prematurely, Hospital relies on the testimony of the physician that he alone made the decision to deliver Adam and that he did so based on his personal examination and diagnosis of Dorothy. We accept, for the moment, Hospital's claim that "there was no evidence to contradict [the physician's] testimony" in this regard. From this point, Hospital argues that in order to recover, Plaintiff must prove the conduct of the nurses was a proximate cause of the injuries sustained. *See Schmidt v. St. Joseph's Hospital*, 105 N.M. 681, 683, 736 P.2d 135, 137 (Ct.App.1987). While not

challenging the nurses' negligence, Hospital contends that negligence cannot result in liability in the absence of proximate cause.[2]

We agree with Hospital as to the law. We do not agree, however, with the application of the law to these facts. To understand the rationale for our holding, it is necessary to explain the respective theories advanced by the parties.

Plaintiff's theory of liability against the physician and Hospital was based on the premature delivery of Adam when the mother, Dorothy, was not in labor. Plaintiff offered substantial evidence to support that theory. While we are not called upon to consider the sufficiency of the evidence,[3] we nevertheless summarize Plaintiff's case briefly in order to make clear what Plaintiff contends actually happened.

After experiencing pain at home, Dorothy, who at the time was twenty-eight weeks pregnant, called her physician's office. The physician's nurse told Dorothy to meet the physician at the hospital. The nurse then informed Hospital that Dorothy was on her way and that she was having contractions. Nurse D., an apprentice, declined to make the examination because of her lack of experience. Nurse W. examined Dorothy and determined that she was dilated to ten centimeters which indicated that Dorothy was ready to deliver. Neither nurse took a history from Dorothy, nor did they talk to her. Nurse W. took Dorothy to the delivery room.

Neither Dorothy nor her mother, who accompanied her to the hospital, thought Dorothy was in labor. Dr. Reyes, a pediatrician called because of a report of a completely dilated, twenty-eight week pregnant woman about to deliver, testified that Dorothy did not appear to be in labor. In

---

**2.** At oral argument, Hospital's counsel conceded, for the purpose of argument, that the hospital nurses were negligent. We take this concession to mean only that, while not agreeing that the nurses were negligent, Hospital does not challenge that element of proof, only

whether the negligence proximately caused Adam's injuries.

**3.** We do not consider the sufficiency of the evidence as to negligence because the physician settled and Hospital did not raise the issue on appeal.

addition, a fetal heart monitor indicated that Adam's heartbeat was normal, but registered no contractions for Dorothy.[4]

The physician and Hospital advanced an entirely different theory. It was their contention, as testified by the physician, that not only was Dorothy in labor, but that Dorothy had a prolapsed bag or bulging membranes, and the fetus was in a transverse lie. This is considered an emergency situation and, according to the physician, requires immediate action to deliver the baby. The physician broke the amniotic sac and delivered the baby. Faced with this situation, as we understand the testimony, if nothing had been done, the baby would have died. After breaking the amniotic sac, the usual risks associated with delivering an underdeveloped infant were present. In this case, Adam is a quadriplegic, deaf, apparently blind, mute, subject to seizures, and has a shunt in his head.

Presented with the two conflicting theories of what occurred, the jury was faced with a clear choice of adopting one theory or the other. The jury accepted Plaintiff's theory and found against the physician and Hospital. *See LeBlanc v. Northern Colfax County Hosp.*, 100 N.M. 494, 496, 672 P.2d 667, 669 (Ct.App.1983) ("Where reasonable minds may differ on the question of proximate cause, the matter is to be determined by the fact finder."). It is important to our discussion to recognize that this was not a situation where witnesses agreed as to a patient's condition and differed only as to what the principals did. To the contrary, this was a case where there was total disagreement as to the patient's condition, i.e., whether Dorothy was in labor. The jury, by finding for Plaintiff, necessarily had to find that Dorothy was not in labor. In short, Plaintiff's and Hospital's theories are wholly irreconcilable. When that is understood, Hospital's argument as to causation can be answered.

The physician's testimony that he *alone* made the decision to deliver Adam is not only consistent with Hospital's theory, it is plausible. One can readily understand that a physician, finding the expectant mother in labor with a prolapsed bag or bulging membranes, dilated to four centimeters with the fetus in a transverse lie, might well consider his own examination determinative. We read the physician's testimony that he relied solely on his own examination without influence from the nurses to be predicated on his theory of what occurred, not on what the jury found.

The jury rejected that theory. *Cf. State v. Chavez*, 101 N.M. 136, 138, 679 P.2d 804, 806 (1984) (" 'It is the province of the jury to weigh the evidence ... to believe, or disbelieve, any witness whose testimony it is called upon to consider.... The finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final.' " (quoting *State v. Williams*, 96 Wash.2d 215, 634 P.2d 868, 872–73 (1981))). It follows that, having determined that Adam was delivered when Dorothy was not in labor, the jury could also find that the conduct of the nurses influenced the physician's decision. There was evidence that the nurses failed to correctly assess Dorothy's condition which may have influenced the physician's determination that she was in labor. When considered in this context, the testimony of Plaintiff's medical expert, Dr. Wade, rises above speculation, as argued by Hospital. Dr. Wade testified that doctors are "primed partly by what nurses or other people tell them," and that the physician here might have been "programmed by the report that the nurses gave him to thinking that ... he had to go ahead and deliver this baby...." *See LeBlanc*, 100 N.M. at 495–96, 672 P.2d at 668–69 (recognizing that actions of nurses can be a contributing cause of injuries suffered by patient subsequently misdiagnosed by doctor because of faulty assessment).

■ Hospital also argues that, absent expert testimony that to a degree of rea-

---

**4.** There is some dispute as to whether the monitor was hooked up to Dorothy. One nurse testified that the only reason the monitor would not be hooked up to Dorothy is if she was not having contractions.

sonable medical probability the nurses' conduct contributed to the damages, liability against Hospital cannot stand. Again, we do not disagree with Hospital's statement of the law. In a medical malpractice case, because of the technical and specialized subject matter, expert medical testimony is usually required to establish departure from recognized standards in the community. *See Pharmaseal Labs., Inc. v. Goffe*, 90 N.M. 753, 758, 568 P.2d 589, 594 (1977). Although that type of proof is missing as to the nurses' conduct, it was introduced through Dr. Wade as to the physician's conduct. Because the nurses' conduct could be viewed by the jury as having influenced the physician's decision to deliver, for the reasons already stated, additional independent medical expert testimony of causation as to the nurses was unnecessary.

To the extent Hospital may be arguing that the conduct of the physician superseded and cut off the nurses' negligence, we believe this court's decision in *Collins v. Perrine*, 108 N.M. 714, 778 P.2d 912 (Ct.App.), *cert. denied*, 108 N.M. 681, 777 P.2d 1325 (1989), controls. In that case, we adopted *Restatement (Second) of Torts* § 442B (1965), and held that:

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability.

The jury was properly instructed on proximate causation under SCRA 1986, 13–305, and found against Hospital which we hold it could do under the facts and law.

### B. *Whether Adam Would Have Suffered Injuries Anyway*

Hospital asserts that "[P]laintiff[ ] never proved that Adam's injuries would have been avoided had he been delivered *after* May 27." In making this argument, Hospital relies on *Bridges v. Shelby Wom-*

*en's Clinic, P.A.*, 72 N.C.App. 15, 323 S.E.2d 372 (1984), *review denied*, 313 N.C. 596, 330 S.E.2d 605 (1985). In that case, the plaintiffs proved that premature birth caused injuries similar to those suffered by Adam. The plaintiffs claimed that the premature birth at thirty weeks gestation resulted from the doctor's delay in examining Mrs. Bridges, which in turn prevented her from being eligible for administration of a labor suppressant drug. The lower court in *Bridges* granted a directed verdict in favor of the doctor. The appellate court affirmed, holding that the evidence was insufficient to establish that delay in examining Mrs. Bridges was a proximate cause of the baby's injuries, and that plaintiffs had failed to present sufficient evidence that had the drug been administered, the baby's injuries would have been prevented. *Id.* 323 S.E.2d at 376.

Assuming *Bridges* correctly states the law in New Mexico, we believe that case is distinguishable. As discussed earlier, in order to find the physician and Hospital liable, the jury had to find that Dorothy was not in labor. In *Bridges*, there was no dispute that the woman was in labor. *Id.* at 374. If Dorothy was not in labor when Adam was delivered, there would be no reason to administer a labor suppressant drug. Where it is clear that the risk of injury increases the earlier the delivery, we do not believe Plaintiff had to prove Adam would not have suffered his injuries had he not been delivered on May 27.

### II. INFLAMMATORY STATEMENTS MADE BY PLAINTIFF'S COUNSEL

Hospital claims that it was denied a fair trial by the improper and inflammatory argument of Plaintiff's counsel during closing summation. Hospital asserts that:

> Plaintiffs' counsel misstated critical testimony, repeatedly accused the defendants and their counsel of dishonesty and of defending this case in bad faith, repeatedly offered their personal opinions on the credibility of witnesses, and asked the jury to act as the "conscience of the

community" and send a message to the medical profession by finding the defendants liable, because the district attorney won't "get involved. They just don't bother doctors."

Hospital contends that the conduct of Plaintiff's counsel was a blatant appeal to bias and prejudice, reflected in a verdict against Hospital, in spite of the complete absence of evidence of proximate cause.

The examples of claimed inflammatory statements cited by Hospital include statements made by Plaintiff's counsel during summation at both the liability stage and the damages stage of the trial. We do not consider the latter. Hospital has not argued that damages were excessive, and those comments could not have influenced the jury's determination of liability because they had not yet been made at that time.

■ Directing our attention to closing arguments at the liability stage of the trial, we note that Defendants did not make any objections during Plaintiff's summation. As a general rule, such failure to object precludes appellate review. *See* SCRA 1986, 12–216; *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 29, 766 P.2d 280, 289 (1988) (" '[O]bjections to the argument of counsel should be made in time for the court to rule on them, and, if necessary, to correct them before the jury retires....' " (quoting *Jackson v. Southwestern Pub. Serv. Co.*, 66 N.M. 458, 474, 349 P.2d 1029, 1039 (1960))), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989); *State v. Barboa*, 84 N.M. 675, 676, 506 P.2d 1222, 1223 (Ct.App.1973) (failure to object during closing argument prevents review).

■ Recognizing this obstacle, Hospital argues that "objection was not necessary because the error was so pervasive and fundamental." We do not believe the doctrine of fundamental error is appropriate in this case.

Although the doctrine of fundamental error has not been extended to civil cases, at least as it relates to claimed inflammatory argument of counsel, our supreme court has, in dictum, warned that statements outside the record and inflammatory comments by counsel could result in reversal of a judgment, even if objections were not made at trial. *Griego v. Conwell*, 54 N.M. 287, 291–92, 222 P.2d 606, 609 (1950). This court in *Grammer v. Kohlhaas Tank & Equipment Company*, 93 N.M. 685, 693, 604 P.2d 823, 831 (Ct.App.1979), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980), interpreted the *Griego* rule as one of last resort. The *Grammer* court said "[w]e should not apply the rule unless we are satisfied that the argument presented to the jury was so flagrant and glaring in fault and wrongdoing as to leave the bounds of ethical conduct." *Id.; see also Wirth v. Commercial Resources, Inc.*, 96 N.M. 340, 347, 630 P.2d 292, 299 (Ct.App. 1981). We hold that Plaintiff's counsel's closing argument does not rise to that level.

Hospital complains about numerous closing comments made by Plaintiff's counsel, including: (1) comments about Nurse Fritz' testimony which was not permitted by the court, (2) inaccurate comments about Nurse D.'s testimony, and (3) comments expressing the attorney's personal opinions on the credibility of witnesses and justness of Plaintiff's cause.

First, Hospital contends that Plaintiff's counsel "asked the jury to believe that Ms. Fritz would have established the causal link between the conduct of the hospital and Adam's birth had she been permitted to testify." We do not understand the comments to do that. In rebuttal, Plaintiff's counsel attempted to respond to Hospital's argument that there was no proof of proximate cause between what the nurses did and the injury suffered by Adam. In responding to that argument, Plaintiff's counsel called the jury's attention to the fact that one of Plaintiff's witnesses, Nurse Fritz, had not "technically [been] permitted to testify that there was a technical relationship between Adam's birth and what [the physician] did. This is because

she is not a doctor." Plaintiff's counsel went on to explain, however, that the jury had heard from other doctors, implying that those experts did establish the causal connection. We do not believe that the comments made can be said to have suggested that the jury believed that Nurse Fritz would have established the causal link had she been allowed to testify.

Second, Hospital contends that Plaintiff's counsel misstated Nurse D.'s testimony regarding whether she actually saw the prolapsed membranes. Plaintiff's counsel quoted Nurse D. as having testified, "I never heard anything about these bulging membranes, not one word from anybody." Hospital refers to Nurse D.'s testimony to the effect that she did not actually see the prolapsed membranes but that Nurse W. told her about them immediately after performing an examination on Dorothy. While the assertion by Plaintiff's counsel is inaccurate, reversal is not required. This statement by Plaintiff's counsel was made in the opening summation and counsel for both Hospital and the physician had ample opportunity during their closing argument to not only correct the inaccurate assertion, but also to capitalize on the erroneous statement, if they chose to do so. Counsel for Hospital took the opportunity in their argument to explain that Nurse Fritz was not qualified to give expert medical testimony. Additionally, the trial court gave SCRA 1986, 13–2007, the Uniform Jury Instruction on closing arguments, which states in part that "neither these final discussions nor any other remarks or arguments of the attorneys made during the course of the trial are to be considered ... as evidence...."

Third, Hospital contends that Plaintiff's counsel repeatedly offered personal opinions on the credibility of witnesses and the justness of Plaintiff's cause. As examples, Hospital cites statements by Plaintiff's counsel such as "I don't believe that for a minute" and "Hutchinson had no credibility at all, to me." While technically inappropriate, read in context we do not think

these and similar statements were so flagrant as to require a new trial.

Finally, Hospital contends that Plaintiff's counsel accused Defendants and their counsel of defending the case in bad faith. Some of the comments related to this include:

If this was a case where a man busted into another man's house, and advanced on the man's wife, and cut open her belly, dropped the baby out, premature delivery, you would have no problem, "Gees, put that boy away. Get him off the streets."

This is not that case at all. Because this is a case where the district attorney is not likely to ever get involved. They just don't bother doctors.

Tell them—I am talking about this doctor, and doctors that are in the audience, and the doctors that hear about this case—that when they take on the responsibility of having a woman completely bare to them, and they take on the responsibility of doing something absolutely as unbelievable as cutting the child out, they better have very, very good justification.

They came up here without credibility, without believability, and they were assuming all the facts necessary, created as an afterthought in order for the defendants to win this case. And I believe it's wrong. And you should tell them so.

To be sure, Plaintiff's closing arguments were forceful to the extreme; however, given the polarized positions of the parties, we cannot say that the arguments violated the *Griego* rule. As we have indicated earlier, this was a case where Plaintiff offered proof to show that, through miscommunications and a breakdown of procedures, a physician delivered a premature baby when it was unnecessary to do so. On the other hand, Defendants offered proof to show that an emergency existed which required the action taken, and that the unfortunate results were unavoidable. The pivotal issue was whether Dorothy was

in labor at the time of the delivery. The jury had to make that determination. In order for Plaintiff to establish his case, it was necessary to challenge the credibility of the defense. Given the intractable positions of each side, we cannot say that the arguments either exceeded the record or violated ethical considerations. We believe that the comments made regarding the physician, Hospital, and medical community could be interpreted as "David v. Goliath" arguments which were well within the facts and theories.

As we stated in *Grammer*, it is for the trial court, within its sound discretion, "to determine if lawyers have transgressed the grounds of professional duty or whether there has been prejudicial misconduct in argument presented to the jury." 93 N.M. at 693, 604 P.2d at 831 (citing *Beal v. Southern Union Gas Co.*, 66 N.M. 424, 349 P.2d 337 (1960)). Here, because no objections were made, this court is unable to review for abuse of discretion. While the reviewing court is not precluded in exceptional cases from making an independent determination, as one of Hospital's out-of-state cases notes, "a healthy regard for the necessity and desirability of having errors corrected at trial rather than on appeal leads us to exercise that power only in exceptional cases where the interest of substantial justice is at stake." *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir.1975) (citations omitted). We hold that the comments and arguments made by Plaintiff's counsel do not require us to exercise that power. Therefore, we affirm on this issue.

## III. RECOVERY OF MEDICAL EXPENSES BY A MINOR

█ Over Hospital's objection, the trial court instructed the jury that it may award Adam damages for future medical and non-medical expenses if it found in his favor on the issue of liability. In its verdict, the jury awarded Adam $1.25 million for future medical expenses and $1 million for future non-medical expenses. Hospital is liable

for 30% of these amounts. Hospital contends that those damages were not recoverable by Adam as a a matter of law because such expenses are the legal responsibility of Adam's parents. The question of whether an injured child may recover damages for future medical and non-medical expenses to be incurred by his parents on his behalf is a question of first impression in New Mexico.

Hospital, relying on the committee comments to Uniform Jury Instruction 13–1804 and the directions for use for Uniform Jury Instruction 13–1809, contends that under New Mexico law, a minor may not sue for medical expenses, because such expenses are the legal responsibility of the parents. SCRA 1986, 13–1804, 13–1809. Hospital also refers to what it calls the majority view that both medical and non-medical expenses resulting from injuries to a minor may be recovered only by the parents.

The committee comment to UJI 13–1804 states that:

> Under New Mexico law, a married man is responsible for the medical care rendered to his wife and children. Therefore, it is not a proper element in a suit by the wife alone or by minors attempting to sue in their own right.

This comment no longer appears in the 1991 Replacement to New Mexico's Uniform Civil Jury Instructions. In addition, we agree with Plaintiff that committee commentaries have not been adopted by the New Mexico Supreme Court and are only copyrighted publications of the University of New Mexico School of Law. *See State v. Zamora*, 91 N.M. 470, 472, 575 P.2d 1355, 1357 (Ct.App.), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978).

We reject the view of those jurisdictions which would prohibit a minor from recovering his or her own medical expenses, *see, e.g., Traylor v. Moyer*, 199 Ga.App. 112, 404 S.E.2d 320, 322 (1991) ("[T]he right to recover medical expenses of a minor is vested with the parents."); *Roberts v. Sisters of Saint Francis Health Servs., Inc.*,

198 Ill.App.3d 891, 145 Ill.Dec. 44, 556 N.E.2d 662, 671 (1990) (cause of action for minor's medical expenses lies with parents); *Ostertag v. La Mont,* 9 Utah 2d 130, 339 P.2d 1022, 1026 (1959) (only father can recover medical bills paid by him on behalf of his child), or hold that the right to recover a minor's medical expenses lies only with the parents but can be waived in favor of the child. *See, e.g., Hazeltine v. Johnson,* 92 F.2d 866, 869 (9th Cir.1937) (parent waives right to recover medical expenses in favor of minor when he brings suit on behalf of minor to recover such expenses); *Cabaniss v. Cook,* 353 So.2d 784, 786 (Ala. 1977) (parent waives right to medical expenses where parent brings action on behalf of child to recover such expenses); *Brown v. Seaboard Air Line R.R.,* 91 Ga. App. 35, 84 S.E.2d 707, 709 (1954) (where minor sues through father, father divests himself of cause of action for medical expenses and vests such cause of action in the child); *Lasselle v. Special Prods. Co.,* 106 Idaho 170, 677 P.2d 483, 486 (1983) (parent may expressly or impliedly waive right to recover certain damages in favor of child); *Smith v. Geoghegan & Mathis,* 333 S.W.2d 254, 257 (Ky.Ct.App.1960). *See generally* 67A C.J.S. *Parent & Child* § 142 (1978) (parent may waive right to recover where parent brings action on behalf of child or permits case to proceed on theory of child's right to recover medical expenses or loss of earning capacity); L.S. Tellier, Annotation, *What Items of Damages on Account of Personal Injury to Infant Belong to Him, and What to Parent,* 32 A.L.R.2d 1060, §§ 13–14 (1953).

We can think of no principled reason why the right to recover a minor's future medical expenses should lie exclusively with the parents, as long as defendants are protected against double recovery. We recognize that generally contracts entered into by minors are voidable, *see generally* 42 Am. Jur.2d *Infants* § 58 (1969 & Supp.1991), however, minors are usually liable for the value of necessaries furnished to them. *See generally id.* § 65. *See also id.* § 72 (medical services are classed as neces-

saries); *id.* § 74 (recognizes exception to general rule that infant's contract to borrow money is voidable where the money is to be used for necessaries); *cf.* NMSA 1978 § 58–6–3 (Repl.Pamp.1991) (legal disability for minors removed for student loans); NMSA 1978, § 59A–18–7 (Repl.Pamp.1988) (legal disability for minors removed for purchase of insurance or annuity). Both the parent and child have been found liable for medical expenses upon a suit by a medical health care provider; therefore, it follows that either should have the right to be compensated for the reasonable value of such medical expenses. *See Scott County Sch. Dist. v. Asher,* 263 Ind. 47, 324 N.E.2d 496, 499 (1975) ("[B]oth parent and child are liable upon suit by the doctor or the hospital, and consequently either may be compensated for the reasonable value of medical expenses."). In addition, the underlying policy consideration of preventing double recovery by allowing a parent to recover such expenses to be incurred by his or her minor child does not appear to be a threat in this case. Neither Rudy nor Dorothy Lopez have filed a claim in their individual capacity.

We find most persuasive the logic and rationale behind the practice adopted by California courts. California follows the rule that the cause of action to recover a minor's medical expenses belongs to both the minor and the parents. *See White v. Moreno Valley Unified Sch. Dist.,* 181 Cal. App.3d 1024, 226 Cal.Rptr. 742, 745–46 (1986), *cited with approval in Wiley v. Southern Pac. Transp. Co.,* 220 Cal. App.3d 177, 269 Cal.Rptr. 240, 241 (1990); *see also Anisodon v. Superior Court,* 234 Cal.App.3d 1, 285 Cal.Rptr. 539, 547 (Ct. App.), *review granted,* 2 Cal.Rptr.2d 1, 819 P.2d 842 (1991). In addition, we agree with California's finding of fault with a rule providing that the right to recover a minor's medical expenses belongs to the parent but can be waived in favor of the minor.

[I]t would be legally impossible for a parent to "waive" his or her claim in

favor of the minor by instituting an action to recover such expenses as guardian ad litem for the minor. If the minor was not an owner of the right of action in the first place, no "waiver" on the part of the parent could serve to transfer it to the minor.

*White,* 226 Cal.Rptr. at 746. The question of waiver should only arise if the parent *also* seeks to recover for the minor's medical expenses. In a situation where the minor has sued to recover his or her future medical expenses, the parent may be held to have waived his or her right to recover such damages and be estopped from seeking double recovery. For the reasons stated, we hold that New Mexico allows a minor, in these circumstances, to recover for his or her future medical and nonmedical expenses.

## IV. INFORMATION REGARDING HOSPITAL'S INSURANCE COVERAGE

■ Hospital argues that reversal is required because Plaintiff established through the testimony of Hospital's expert witness, Dr. Hutchinson, that Hospital was insured. Rule 11–411 of the New Mexico Rules of Evidence, SCRA 1986, 11–411, provides:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

New Mexico law is clear that evidence of insurance does not violate Rule 11–411 if introduced to show bias or prejudice of a witness. *See, e.g., Mac Tyres, Inc. v. Vigil,* 92 N.M. 446, 448, 589 P.2d 1037, 1039 (1979). In addition, this court has recently permitted such testimony in a case very

similar to the instant action. In *Sutherlin v. Fenenga,* 111 N.M. 767, 773–74, 810 P.2d 353, 359–60 (Ct.App.), *cert. denied,* 111 N.M. 678, 808 P.2d 963 (1991), this court held that plaintiff's questioning of a physician, defendant's witness, in an effort to determine whether the witness had a possible bias or prejudice, and which resulted in the introduction of insurance evidence, was not improper.

The only New Mexico case cited by Hospital is *Falkner v. Martin,* 74 N.M. 159, 162, 391 P.2d 660, 662 (1964), where the supreme court stated:

A mistrial will generally be declared in a negligence action if the question of insurance is brought into the case in such manner as to be calculated to influence the verdict of the jury. Such testimony, however, would clearly not be prejudicial to the plaintiff, and will not require a mistrial when the injection of insurance is brought out upon direct examination of defendant or one of his witnesses.

Plaintiff contends that Defendants injected the issue of insurance by introducing Dr. Hutchinson's curriculum vitae which lists certain positions held by Dr. Hutchinson with the New Mexico Physicians Mutual Liability Company.[5] Plaintiff questioned Dr. Hutchinson as to his relationship with the insurance companies listed in his curriculum vitae.

Plaintiff cites to *Davila v. Bodelson,* 103 N.M. 243, 250, 704 P.2d 1119, 1126 (Ct. App.), *cert. denied,* 103 N.M. 177, 704 P.2d 431 (1985), which held that introduction of insurance coverage is not per se prohibited in New Mexico. The *Davila* court explained that:

[T]he trial court has a great deal of discretion in deciding when to admit this type of evidence, which requires, even when it falls within one of the exceptions to Evid.Rule 411, a balancing of the probative value against the prejudicial effect

---

5. The exhibit indicates that Dr. Hutchinson was the Chairman of the Loss Prevention Committee from 1986–1988 and was on the Board of Directors of the insurance company in 1988. The exhibit also names Dr. Hutchinson as a consultant for Medical Liability and Risk Management, MMI Companies, Inc.

and against other considerations listed in Evid.Rule 403.

*Id.* (citing *Safeco Ins. Co. v. United States Fidelity & Guar. Co.*, 101 N.M. 148, 679 P.2d 816 (1984)); *Mac Tyres*, 92 N.M. at 448, 589 P.2d at 1039.

The record indicates that the trial court did balance the prejudice to Defendants and the probative value of the testimony in reaching its decision to allow the testimony. The trial court, out of the presence of the jury, heard arguments from both sides and determined that Plaintiff was permitted to question Dr. Hutchinson as to his relationship with Defendants' insurance companies. In addition, the trial court, claiming to make an effort to err on the side of caution, gave a requested instruction to the jury immediately after Dr. Hutchinson testified, rather than as customarily done at the end of trial.

Under these circumstances, we are unable to say that the trial court abused its discretion in allowing Plaintiff's counsel to question Hospital's witness about his relationship with certain insurance companies in an effort to determine whether the witness had a possible bias or prejudice. Therefore, we affirm on this issue as well.

Having found no reversible error, we affirm judgment in favor of Adam against Hospital.

IT IS SO ORDERED.

ALARID, C.J., and CHAVEZ, J., concur.