**Beth Ann FRITTS, surviving spouse of David Fritts, deceased, Appellant,**

**v.**

**Richard McKINNE, M.D., Appellee.**

No. 86,146.

Court of Civil Appeals of Oklahoma, Division 2.

Nov. 12, 1996.

Certiorari Denied Feb. 11, 1997.

Reversed and remanded for new trial.

*bile Insurance Company,* 810 P.2d 365, 371    (Okla.1991).

Townley Price, James E. Frasier, Steven R. Hickman, Frasier, Frasier & Hickman, Tulsa, for Appellant.

Marthanda J. Beckworth, Walter D. Haskins, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, for Appellee.

## OPINION

STUBBLEFIELD, Judge.

Plaintiff appeals from judgment on jury verdict entered in favor of defendant in a medical negligence action. Defendant doctor has appealed from the order assessing costs. Based on our review of the record on appeal and applicable law, we reverse.

David Fritts was seriously injured in a one-vehicle accident, which occurred during the early morning hours of February 20, 1990. David Fritts and his friend, David Manus, had been drinking prior to the accident. There was some dispute about which one of the two men was driving the Fritts pickup truck at the time of the accident. In any event, the vehicle hit a tree at approximately seventy miles per hour and overturned.

David Fritts sustained serious injuries as a result of the accident. He was diagnosed with a Lefort II fracture—literally all of his major facial bones were broken. He was placed in intensive care due to concern over the impact injury to his chest but later moved into a regular room.

On February 25, 1990, Fritts was scheduled to undergo surgery for repair of his facial fractures.[1] Although an oral surgeon was to perform the facial repairs, Defendant, Dr. Richard McKinne, an otorhinolaryngologist, was called on to assist the oral surgeon by performing a tracheostomy to allow Fritts to breathe during surgery. He was also to repair damage, if it existed, to Fritts' sinuses.

As Dr. McKinne started the tracheostomy, Fritts began bleeding profusely from a cut or rupture of the innominate artery. The tracheostomy was not completed, and the rest of the surgery was delayed. Fritts lost a major amount of blood, failed to regain conscious-

---

1. The surgery was performed five days after admission to allow swelling in his face to go down.

ness and died in the hospital some three days later.

Plaintiff Beth Ann Fritts, surviving spouse of David Fritts, deceased, filed this wrongful death action. She originally named other parties, but we are concerned here only with the claim against Dr. McKinne, which proceeded to jury trial.

Plaintiff claimed that Dr. McKinne violated the standard of care in performing the tracheostomy in that he failed to properly identify and isolate the innominate artery. As a result, he cut the artery and then failed to promptly and properly arrest the loss of blood while waiting for a vascular or thoracic surgeon to arrive. She claimed that her husband died from complications associated with the massive blood loss.

Dr. McKinne denied negligence. He further asserted that the problems encountered during the tracheostomy resulted from the fact that Fritts had an anomalous innominate artery—it was found up in his neck area, when normally it should have been in the chest. Dr. McKinne maintained that the artery was injured during the accident and that the injury was subclinical—not evident from physical examination or x-ray studies. He claimed that, when he started the tracheostomy and removed tissue from the trachea, the weakness and injury in the innominate artery resulted in a rupture of the blood vessel, which caused a "horrendous gush of blood."

The Doctor also asserted a comparative negligence defense based on the contention that Fritts was injured while driving drunk or was drunk while riding in a vehicle with Manus, who also was drunk.[2] In apparent response, Plaintiff filed a motion in limine, requesting the trial court to exclude any mention of Fritts' use of drugs or alcohol. Plaintiff admitted that Dr. McKinne should be allowed to introduce evidence about injury to her husband's artery during the accident. However, she asserted that evidence of her husband's intoxication, at the time of the accident, was not admissible to prove *his* negligence and was inflammatory.

Dr. McKinne objected to the motion in limine claiming that such evidence was (1) relevant to the issue of Fritts' comparative negligence—"[his] injury arose in the automobile accident that he caused, because he was either driving drunk or elected to ride with somebody that [*sic*] was driving drunk," and because "[his] negligence was the sole cause of his death;" and, (2) relevant to the issue of damages—he would present expert testimony that Fritts had a substantially diminished life expectancy due to his drug and alcohol use. The trial court denied the motion.

At trial, over Plaintiff's objection, counsel for Dr. McKinne introduced, through various witnesses and exhibits, evidence regarding Fritts' past history of and treatment for substance abuse[3] and his consumption of alcohol on the night of his automobile accident. Indeed, the use of alcohol on the night of the accident and the history of substance abuse became the principal focus of the doctor's defense. Also over Plaintiff's objection, the trial court instructed the jury on the issue of Fritts' comparative negligence. These instructions included an instruction on "General Duty of Drivers," which stated that "[i]t is the duty of the driver of a motor vehicle to use ordinary care to prevent injury to himself or to other persons."

The jury returned a verdict in favor of Dr. McKinne. The trial court entered judgment on this verdict and also awarded Dr. McKinne costs in the amount of $3,579.18. Plaintiff appeals from the judgment entered on jury verdict, and Dr. McKinne counter-appeals, claiming that the trial court erred in failing to award him the entire amount of requested costs—$11,092.29.

Plaintiff raises two interrelated propositions of error on appeal. She claims that the trial court erred in admitting evidence regarding her deceased husband's history of substance abuse and in allowing the jury to

---

2. A blood sample taken from Fritts approximately three to four hours following the accident revealed an alcohol content of .20.

3. The trial court allowed Plaintiff a continuing objection to evidence of Fritts' substance abuse history. Evidence admitted included Fritts' treatment at a mental health center.

consider comparative negligence—based on the events of the automobile accident—as a basis for reducing or denying recovery on the medical negligence claim. According to Plaintiff, her husband's drug and alcohol problems and his negligence with regard to the automobile accident were not relevant to the medical negligence claim, were highly prejudicial, and instructing the jury on such issues was reversible error. For the following reasons, we must agree.

■ We first address the proposition regarding comparative negligence—whether it was proper for the trial court to allow the jury to consider the matter of the decedent's possible negligence in the accident which led to his hospitalization and medical treatment. To establish a case of medical negligence, Plaintiff was required to show that Dr. McKinne's actions were below the requisite standard of care and that such acts resulted in her husband's death. *See Boxberger v. Martin,* 552 P.2d 370 (Okla.1976); *Robertson v. LaCroix,* 534 P.2d 17 (Okla.Ct.App.1975). Dr. McKinne denied that his treatment of Fritts deviated in any manner from the appropriate standard of care. He defended against the allegations of negligence by contending that, due to Fritts' unusual anatomy and the resultant injury to his artery from the high speed impact, the rupture of the artery was inevitable. This was a proper and appropriate defense. However, we conclude that the interjection of the issue of Fritts' possible negligence *in the automobile accident,* a matter unrelated to the medical procedures, was a substantial error that removed the jury's consideration from the relevant issues and led to an erroneous excursion into irrelevant and highly prejudicial matters.

■ There are limited circumstances under which reasonableness of patient conduct can be an appropriate consideration in medical negligence cases. For example, evidence of a patient's failure to reveal medical history that would have been helpful to his physician raises the issue of contributory negligence, particularly where the evidence also shows that the patient may have been advised of the importance of this information. *Graham v. Keuchel,* 847 P.2d 342, 358 n. 78 (Okla.1993). A patient's furnishing of false information about his condition, failure to follow a physician's advice and instructions, or delay or failure to seek further recommended medical attention also are appropriate considerations in determining contributory negligence.[4] Under certain circumstances, a patient's actions *prior* to seeking medical attention properly may be considered as evidence of contributory negligence. *Sales v. Bacigalupi,* 47 Cal.App.2d 82, 117 P.2d 399 (1 Dist.1941) (in action against physician for malpractice in treating infection to plaintiff's foot after she stepped on a nail, whether patient was contributorily negligent in her attempts to first treat foot herself was for jury). There is nothing akin to any of these factual situations in this case.

■ Under the guise of a claim of contributory negligence, a physician simply may not avoid liability for negligent treatment by asserting that the patient's injuries were originally caused by the patient's own negligence. "Those patients who may have negligently injured themselves are nevertheless entitled to subsequent non-negligent medical treatment and to an undiminished recovery if such subsequent non-negligent treatment is not afforded." *Martin v. Reed,* 200 Ga.App. 775, 409 S.E.2d 874, 877 (1991).

Thus, aside from limited situations, negligence of a party which necessitates medical treatment is simply irrelevant to the issue of possible subsequent medical negligence. Herein, Dr. McKinne testified that, at the time of the surgery, which was five days after the accident, "alcohol was not a problem." Yet, from the time of his opening statement, the principal focus of the doctor's counsel was on the behavior of the decedent before and leading up to the automobile accident:

> [T]he evidence in this case, Ladies and Gentlemen, is going to be about a tragedy.

---

4. *See Rochester v. Katalan,* 320 A.2d 704 (Del. 1974); *LeBlanc v. Northern Colfax County Hosp.,* 100 N.M. 494, 672 P.2d 667 (Ct.App.1983); *Mu-* *sachia v. Rosman,* 190 So.2d 47 (Fla.App. 3 Dist. 1966).

And the tragedy ... what this evidence in this case will be about is drinking and driving and what it can do to a man and his family.

....

[T]he evidence will be that Mr. Fritts made a choice to drink and drive, and that resulted in his death.

... And he'd had a problem with alcohol, and he'd had a problem with some substance abuse that had gone on for a number of years. And this problem kept coming back. But on February 20th of 1990 this problem came back with a vengeance.

Counsel wound up his closing statement by asking the jury to consider:

Where did the tragedy begin? Where did the negligence exist that took David Fritts' life? On February 20, 1990, David Fritts ... made a very bad decision. He made a decision to start drinking again, after he had been counseled at the Bill Willis Community Mental Health Center.... [H]e did something that each and every one of us ... all know is negligent. He made a decision to drink and drive. And that's a problem that our society is well confronted with, and that we have not been able to control....

Thus, the trial shifted from one of medical malpractice to the assignment of negligence in the automobile accident.

Counsel for Dr. McKinne continually focused on *the cause of the automobile accident,* involving highly inflammatory matters of intoxication and chronic alcohol abuse, instead of focusing on whether Fritts' injuries in the automobile accident resulted in his death. It is totally illogical to argue that, if Fritts had not been driving while intoxicated, he would not have required a physician.[5] In effect, that is just how Dr. McKinne's defense proceeded.

Thus, we conclude that the submission of the issue of comparative negligence—decedent's conduct unrelated to his medical treatment—was error. We also find a strong probability that the erroneously given instructions misled the jurors and caused them to reach a result different from what they would have reached but for the flawed instructions.

Next, we examine the purported error in admitting evidence of the decedent's drinking at the time of the automobile accident as well as evidence of his prior chronic substance abuse. Our prior discussion has pointed out the irrelevant and inflammatory nature of such evidence. However, Dr. McKinne asserts that Plaintiff waived any such error because she failed to object when such evidence was first addressed with a witness. Although we have found that the submission of the issue of comparative negligence was reversible error, we address this matter to provide guidance on new trial.

█ Plaintiff filed a motion in limine to prohibit opposing counsel from referring to or offering evidence on these highly prejudicial matters, but the trial court overruled the motion. Thereafter, the evidence was the focus of Dr. McKinne's counsel in his opening statement, and Plaintiff's counsel *did not object* when the matter was first the subject of testimony. It is the rule that a motion in limine is advisory, and that to preserve an objection for appeal, an objection must be made when the evidence is submitted. *Corbell v. State ex rel. Dept. of Transp.,* 856 P.2d 575 (Okla.Ct.App.1993).

█ However, from our review of the record, we conclude that although counsel did not interpose contemporaneous objections to every inquiry regarding the irrelevant evidence, *see Bauman v. International Harvester Co.,* 191 Okla. 392, 130 P.2d 287 (1942), there were *numerous* objections. Indeed, Plaintiff was granted a continuing objection, which negated the need of continued objections that would serve little additional purpose but to focus the jury's attention on the potentially prejudicial matters. We conclude that there was no waiver and that the issue

---

5. In *Eiss v. Lillis,* 233 Va. 545, 357 S.E.2d 539, 543 (1987), the court rejected such an argument as "obviously wrong," noting that if it were accepted, in any case where the patient was responsible for events that led to his hospitalization, the treating physician could avoid liability for malpractice.

of the admissibility of the evidence was properly preserved.

■ Here, much of the evidence and statements of counsel were, indeed, irrelevant and highly inflammatory. The fact of the automobile collision was certainly relevant—but the cause of that collision was not. Where alcohol was not a factor in the medical treatment, the fact that Fritts' injury may have been caused by his consumption of alcohol simply has no material bearing whatsoever on whether his eventual death was the result of negligent treatment by Dr. McKinne.

■ Fritts' history of substance abuse *is* relevant to the issue of damages where there is evidence of its effect on probable life expectancy, and Plaintiff seeks damages based on loss of future earnings. However, like evidence of Fritts' drinking on the night of the accident, it was not proper for the jury to consider such evidence in regard to the claim of negligence against Dr. McKinne. Where evidence is admissible on a certain point only, the trial court should at least advise the jury to consider it on that point alone in order to assure that the evidence will not be applied improperly. *St. Louis & San Francisco Ry. Co. v. Murray*, 50 Okla. 64, 150 P. 884 (1915) (syllabus 3); *see also American Biomedical Group, Inc. v. Norman Regional Hosp. Auth.*, 855 P.2d 1074, 1080 (Okla.Ct.App. 1993). Here, where the evidence is extremely inflammatory, bifurcation of trial of the liability and damages issues would have avoided completely the possibility of prejudice from the evidence.

■ We find that evidence of Fritts' intoxication and history of substance of abuse, along with repeated references to it by defense counsel, was sufficiently prejudicial to Plaintiff's case as to have prevented a full and fair trial of the issues. Furthermore, the admission of relevant but inflammatory evidence, admissible for only one issue, was reversible error in the absence of limiting instructions or bifurcated trial.

As for Dr. McKinne's counter-appeal, the reversal of the judgment necessarily entails reversal of his award of costs based on prevailing party status. Therefore, we need not address his claim of inadequacy of the cost award.

The judgment in favor of Dr. McKinne is REVERSED. The cause is remanded to the trial court with directions to grant a new trial.

GOODMAN, P.J., and BOUDREAU, J., concur.