MARY SMITH, Special Adm'r of the Estate of Willard Smith, Deceased, Plaintiff-Appellant, v. HAROLD M. PERLMUTTER, Defendant-Appellee.

Third District   No. 3—85—0649

Opinion filed July 31, 1986.

Francis Van Hoorewegh, of Moline, and Paul R. O'Malley, of O'Malley & O'Malley, of Chicago, for appellant.

Robert Waterman, Sr., Robert V. P. Waterman, Jr., and Charles E. Miller, all of Lane & Waterman, of Davenport, Iowa, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Mary Smith, plaintiff-decedent's administratrix, brought a medical malpractice action against Dr. Harold M. Perlmutter, M.D., in the circuit court of Rock Island County. A judgment was entered upon a jury verdict finding for the defendant. Plaintiff appeals from the judgment and order denying her post-trial motion requesting a new trial. We affirm.

Plaintiff asserted defendant negligently failed to fully diagnose, properly treat or refer the decedent, Willard Smith, to a specialist for medical treatment for his coronary artery disease. As a result Smith was found dead at the YMCA shortly after jogging in the late afternoon. An autopsy revealed death was caused by severe coronary artery disease.

Defendant asserted he was not negligent and that he met the applicable standard of practice in his care and treatment of Smith. Perlmutter is a board-certified general surgeon who has been practicing in Rock Island County since 1950. Approximately 70% of his practice is devoted to general medicine.

Smith had been a patient of Perlmutter's since 1963. On March 10, 1981, Smith had an office visit with Perlmutter at which time the office record reflects he had a complaint of "chest pains." Due to an order *in limine,* no evidence was allowed as to what Smith told Perlmutter about these chest pains.

Perlmutter scheduled Smith for an electrocardiogram (EKG) and a chest X ray at Illini Hospital. Smith's chest X ray was read as normal. His EKG test was reported as "Abnormal" and the findings were interpreted by Dr. Pogue as possible "ischemic in origin" or otherwise possibly related to coronary artery obstruction. No evidence was allowed as to what Perlmutter told Smith about the results of the EKG, also because of the order *in limine.* Smith was not further seen by Perlmutter for over 10 months, or until several weeks before his death in January of 1982. Dr. Perlmutter, Dr. Coleman, Dr. Pogue, Dr. Kleinschmiett and even plaintiff's expert, Dr. Mayron, agreed that how the patient describes the pain to his physician is extremely important in diagnosing angina. Out of the six doctors who testified at trial, only Dr. Mayron felt Perlmutter had done anything wrong in his care and treatment of Smith.

■ The decision of a trial court to grant or deny a new trial is an exercise of discretion which should not be disturbed unless a clear

abuse of that discretion is shown. (*Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500.) In determining whether that discretion was abused, the reviewing court will consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825.

█ It is plaintiff's contention that she was denied a fair trial. This argument is premised on plaintiff's assertion the defendant violated the court's order *in limine*. The court ordered:

"The defendant, his counsel and all interested persons called to testify by the defendant should be instructed that they are incompetent under the Dead Man's Act to attempt to testify directly or voluntarily, comment, suggest or infer upon any content of conversation between the decedent and the defendant, Harold M. Perlmutter, M.D."

Plaintiff first alleges that the following hypothetical questions posed to the defendant violated the court's order *in limine*:

"Q. Doctor, if a patient of yours came to your office and said they had been awakened early in the morning that morning around 2:00 or 3:00 a.m., and if this patient said they had had chest and left arm discomfort as that described by Mrs. McKnight [the former Mrs. Smith], that she observed her husband experiencing, what would your customary practice be?"

\* \* \*

Q. Doctor, if a patient of yours came into your office and said they had experienced some chest pain, discomfort, while cutting the grass, similar to that described by Mrs. McKnight that she observed her husband experiencing and that was related to you, what would you do?"

Initially we must note that at no time during or after Perlmutter's direct examination in connection with the hypothetical questions did plaintiff's counsel object to either the question posed or the responses given. A party's failure to timely object during trial waives any alleged error unless the errors complained of are so pervasive as to prevent the litigants from receiving a fair trial. *Blake v. Delhotel* (1976), 39 Ill. App. 3d 725, 350 N.E.2d 880.

In the instant case evidence was introduced by plaintiff at trial that Mrs. Smith observed Willard Smith experiencing severe chest pains while he was mowing the lawn at his home in the fall of 1980. Smith did not seek any medical care for the incident. Mrs. Smith further testified that some months later around 2 a.m. or 3 a.m., the morning of March 10, 1981, she awoke from her sleep and observed

Smith sitting at the edge of their bed holding his chest. He then got up, walked around the bedroom rubbing his left arm, and eventually went back to bed and fell asleep.

■ Assumptions in a hypothetical are proper so long as they are within the realm of direct or circumstantial evidence, or are reasonable inferences from the established facts. (*Guardian Electric Manufacturing Co. v. Industrial Com.* (1973), 53 Ill. 2d 530, 293 N.E.2d 590.) The record shows that every assumption included had a basis in the evidence. At no time did Perlmutter testify concerning any conversation that he had with Willard Smith. His testimony related solely to how he would treat a hypothetical person who presented himself with the same complaints as were described by Mrs. Smith.

■ For violations of an order *in limine* to serve as the basis for a new trial, the violations must be clear and rise to the level of having so prejudiced the plaintiff to have denied her a fair trial. (*Reidelberger v. Highland Body Shop, Inc.* (1979), 79 Ill. App. 3d 1138, 399 N.E.2d 247, *aff'd* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.) What is clear is that neither Perlmutter nor his counsel testified, commented, suggested or inferred the content of any conversations between the decedent and Perlmutter. The questions posed to defendant were merely hypotheticals based upon evidentiary facts, and nothing in the record suggests that plaintiff was in any way prejudiced by Perlmutter's testimony in connection with these hypotheticals.

■ ■ Secondly, plaintiff alleges defense counsel committed reversible error in suggesting to the jury that the defense was denied the opportunity to directly present relevant and material evidence due to technical rules of law. Specifically, defense counsel in his closing argument explained why nothing was said by defendant about Smith's symptoms on March 10, 1981, and said, "The laws don't permit the doctor of the other parties to talk about conversations they had with Mr. Smith."

Here, again, at no time during or after argument did plaintiff object or otherwise move to strike the alleged prejudicial remark. The rule generally adopted is that such assignments of error will not be considered on appeal unless objection to the alleged prejudicial argument has been made in the trial court, a ruling of the court obtained and the record showing the objection and ruling preserved. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249.) Only when such comments are so prejudical that the party's litigant cannot receive a fair trial and the judicial process stand without deterioration will the reviewing court consider such assignments of error when no

objection is made. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249.) We find counsel's remark merely an explanation of and fair comment on the court's instruction on the Dead Man's Act and in no way prejudiced plaintiff or denied her a fair trial.

■ Plaintiff lastly argues the trial court errored in allowing instructions regarding comparative negligence to be submitted to the jury. This argument is premised on plaintiff's assertion that the supporting evidence introduced was incompetent and in violation of the court's order *in limine*.

After having considered the entire record, it is our opinion that plaintiff's contention is without merit. Evidence was introduced by plaintiff that Smith in the fall of 1980 experienced severe chest pains while mowing the lawn yet did not seek any professional advice from either defendant or any other doctor for that incident. Plaintiff's expert testified failing to seek medical care following such an incident was not prudent. He further testified it was also not prudent for Smith to have delayed seeking medical attention after being awakened with severe chest pains during the early morning hours of March 10, 1981. There was also testimony that Smith had suffered a heart attack some four to six hours prior to jogging at the YMCA on the evening he died. Again failing to seek medical care after such an episode was not prudent.

In view of this evidence and the fact the instant case was tried under the doctrine of comparative negligence, the court properly instructed the jury on the issue of Smith's negligence.

For these reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.