**Lorraine S. DeMOSS, as Administrator of the Estate of Brian S. DeMoss and as Parent of Minors Sarah M. DeMoss and Stuart R. DeMoss, Appellants,**

v.

**Raymond M. HAMILTON and Medical Associates of Maquoketa, P.C., Appellees.**

No. 99–1887.

Supreme Court of Iowa.

May 8, 2002.

Rehearing Denied June 27, 2002.

Thomas L. Staack and Chad A. Swanson of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellants.

James E. Shipman and Allison M. Heffern of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellees.

NEUMAN, Justice.

Plaintiff Lorraine DeMoss's husband died of a heart attack several hours after he was examined and treated by defendant Raymond Hamilton, D.O., at the Jackson County Public Hospital in Maquoketa. DeMoss sued Hamilton and his medical group, Medical Associates of Maquoketa, P.C., for malpractice. On this appeal following the jury's verdict for the defendants, DeMoss alleges trial court evidentiary and instructional error warranting a new trial. At issue are questions concerning when, if ever, a patient's fault may be

considered by the jury and compared with the alleged fault of the doctor. Although a comparative fault instruction was erroneously given here, we need not reverse because the jury answered a special interrogatory finding the doctor without fault whatsoever. We therefore affirm.

## I. Background Facts and Proceedings.

On May 1, 1996, thirty-two year old Brian DeMoss experienced chest pains that prompted him to seek medical attention at the Jackson County Public Hospital. He was examined in the emergency room by his physician, Dr. Raymond Hamilton. Hamilton observed recurrent bronchitis with a low-grade fever and productive sputum. He also noted that Brian was experiencing discomfort in the lower right sternal and rib region. Hamilton ordered an electrocardiogram. It reportedly showed no acute changes. Blood pressure and cardiac enzyme screens likewise tested within normal limits. Hamilton discharged Brian with a prescription for antibiotics and instructions to "[r]echeck on Friday if not improved."

Early the next morning, Brian suffered a heart attack at his home and died. This malpractice action was brought by his wife, Lorraine DeMoss, as the administrator of his estate and parent of their two minor children. Her petition alleged that Hamilton's negligent care and treatment proximately caused Brian's death. She sought damages for wrongful death as well as recovery of consortium damages, individually and on behalf of her children.

During discovery, greater detail about Brian's medical history emerged. Early onset of coronary disease runs in Brian's family. His mother suffered a myocardial infarction at age forty-seven, his father at age forty-four. In 1994, Brian suffered a heart attack while attending a truck-driving course in Alabama. He was treated successfully with angioplasty and thrombolytics. His physicians warned, however, that he must stop smoking and pursue an aggressive exercise regimen to lower his weight and cholesterol. Brian evidently understood these recommendations but was unable to effectively implement them.

Anticipating that Hamilton would use Brian's health history as a defense tool at trial, DeMoss moved in limine to exclude any evidence or argument suggesting that her claims should be reduced by proof that Brian "failed to begin an exercise program, failed to lose weight, failed to stop smoking, and/or failed to have regular follow-up exams after his 1994 heart attack." Hamilton countered that such proof was relevant to the central issue in the case—Brian's cause of death. DeMoss disagreed, claiming the record would show that Brian died of a myocardial infarction which, had it been properly diagnosed by Hamilton, could have been treated and his life thereby saved. Hamilton asserted that Brian suffered from chronic congestive heart failure. His death from sudden cardiac arrest, Hamilton argued, was proximately caused by Brian's negligent failure to heed his cardiologists' pre-May 1, 1996 advice. He claimed that expert testimony would support that contention at trial.

The district court overruled DeMoss's limine motion, and the subsequent evidentiary objections tendered by her on the same point, thus permitting the jury to consider proof of Brian's failure to exercise ordinary care in reducing his risk of heart disease. However neither the court's evidentiary rulings nor its jury instructions permitted Hamilton to ascribe fault personally to DeMoss for her failure to encourage or monitor Brian's compliance with his doctors' recommendations.

The court's instructions to the jury permitted consideration of three grounds of

fault against Hamilton: failure to obtain an adequate medical history, failure to properly assess and diagnose Brian's condition, and failure to hospitalize him for further testing and treatment. An "eggshell plaintiff" instruction advised that if Brian's heart condition made him more susceptible to injury than a person in normal health, Hamilton was nevertheless responsible for all injuries proximately caused by his negligence. The court also told the jury that if Hamilton was negligent, and his negligence was a substantial factor in reducing Brian's chance of survival, the jury could award damages to compensate for that loss. Finally, and most pertinent to this appeal, the court instructed the jury (over DeMoss's objection) that it could assign a percentage of fault to the plaintiff if it found that Brian was at fault "by failing to follow recommendations of the previous physicians," and that such fault was a proximate cause of the damages sustained by the plaintiff.

Upon submission of the case, the jury returned a special verdict finding Hamilton without fault. The district court denied DeMoss's motion for new trial and this appeal followed. Our review is limited to the correction of errors at law. *Hughes v. Massey–Ferguson, Inc.*, 522 N.W.2d 294, 295 (Iowa 1994).

## II. Issue on Appeal.

DeMoss's appeal focuses on the evidence regarding Brian's conduct as it bears on the state of his health when he presented himself in the emergency room on May 1, 1996. At the outset we note that both parties seem to agree that such evidence was relevant and admissible on the question of Brian's life expectancy and lost chance of survival. This court has previously observed, in a medical malpractice context, that a patient's preexisting condition may be considered "in assessing the value of the interest destroyed or affected." *Wendland v. Sparks*, 574 N.W.2d 327, 331 (Iowa 1998) (quoting Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353, 1361 (1981)).

DeMoss's real quarrel is with the court's submission of a comparative fault instruction. Thus she frames the issue on appeal this way:

[W]hether, in a medical malpractice case, a jury can hear evidence and assess fault against the patient (or the patient's representative) when the patient's conduct provides the occasion for medical attention which forms the basis for the medical malpractice claim, or when the patient's conduct contributes to an illness or condition for which the patient seeks medical attention and which forms the basis for the medical malpractice claim.

In short, DeMoss contends that Brian's conduct before encountering Hamilton is irrelevant to the issue of Hamilton's alleged misdiagnosis. Her argument stems from the fundamental proposition that, under the guise of comparative fault, "a physician simply may not avoid liability for negligent treatment by asserting that the patient's injuries were originally caused by the patient's own negligence." *Fritts v. McKinne*, 934 P.2d 371, 374 (Okla.Civ.App. 1996). In other words, even a patient who suffers a self-inflicted injury is entitled to non-negligent medical treatment and "an undiminished recovery if such subsequent non-negligent treatment is not afforded." *Id.* (quoting *Martin v. Reed*, 200 Ga.App. 775, 409 S.E.2d 874, 877 (1991)).

Hamilton responds by asserting, correctly, that a patient's negligent conduct may be considered in limited circumstances. For example, a patient's failure

to cooperate with or follow reasonable directions for the treatment of an ailment may be relevant in the appropriate case. *Id.; see Jalaba v. Borovoy,* 206 Mich.App. 17, 520 N.W.2d 349, 352 (1994) (patient increased foot injury by failing to use crutches, justifying comparative fault instruction); *see generally* Lawrence E. Blades & Charles A. Blades, *Iowa Tort Guide* § 19.26 at 258 (5th ed.2000); 22 Am.Jur.2d *Damages* § 533, at 614 (1988); *cf. Wambold v. Brock,* 236 Iowa 758, 763, 19 N.W.2d 582, 584 (1945) (no basis for claim of contributory negligence where doctor, who claimed patient's injury resulted from failure to wear bandage, neglected to advise patient to do so).

 The parties are at odds over the application of these legal maxims here. While plaintiff's argument focuses solely on Hamilton's action (or inaction) concerning Brian's *fatal* heart attack, the defendant focuses almost exclusively on the impact of Brian's failure to heed the advice of doctors treating his *last* heart attack. But the question is which conduct is relevant to the cause of action. In *Fritts,* for example, where the plaintiff alleged negligence in medical procedures performed several days after a collision stemming from the patient's drunk driving, the Oklahoma court distinguished a proper defense from an improper one this way:

> [The doctor] denied that his treatment of Fritts deviated in any manner from the appropriate standard of care. He defended against the allegations of negligence by contending that, due to Fritts' unusual anatomy and the resulting injury to his artery from the high speed impact, the rupture of the artery was inevitable. This was a proper and appropriate defense. However, we conclude that the interjection of the issue of Fritts' possible negligence *in the automobile accident,* a matter unrelated to

the medical procedures, was a substantial error that removed the jury's consideration from the relevant issues and led to an erroneous excursion into irrelevant and highly prejudicial matters.

*Fritts,* 934 P.2d at 374. The distinction drawn by the court in *Fritts* is consistent with the majority rule, advanced by DeMoss, that

> to be considered as and constitute contributory negligence in a medical malpractice action, a patient's negligence must have been an active and efficient contributing cause of the injury, must have cooperated with the negligence of the malpractitioner, must have entered into proximate causation of the injury, and must have been an element in the transaction on which the malpractice is based. Accordingly, in a medical malpractice action, the defense of contributory negligence is inapplicable when a patient's conduct provides the occasion for medical attention, care, or treatment which later is the subject of a medical malpractice claim or when the patient's conduct contributes to an illness or condition for which the patient seeks the medical attention, care, or treatment on which a subsequent medical malpractice claim is based.

*Jensen v. Archbishop Bergan Mercy Hosp.,* 236 Neb. 1, 459 N.W.2d 178, 186–87 (1990) (patient's failure to heed doctor's advice to lose weight may have caused pulmonary embolism but is irrelevant to claim that doctor later negligently treated the condition); *accord Matthews v. Williford,* 318 So.2d 480, 483 (Fla.Dist.Ct.App. 1975) (patient's failure to follow advice to quit smoking following heart attack ten years earlier too remote to support comparative fault instruction); *Van Vacter v. Hierholzer,* 865 S.W.2d 355, 360 (Mo.Ct. App.1993) (reversal warranted where comparative fault instruction invited jury to

apportion fault based on conduct not proximately causing death); *Gravitt v. Ward*, 258 Va. 330, 518 S.E.2d 631, 635 (1999) (insufficient proof of patient's failure to notify doctor of breast lump to warrant comparative fault instruction).

Applying these principles to the case before us, it is tempting to conclude that the temporal proximity as well as the causal relationship between Brian's conduct and his heart disease makes for a closer call on proximate cause than the cases upon which DeMoss relies. In fact the case is not unlike *Fritts*, where the court noted the relevance of the patient's peculiar anatomy as it bore on the proximate cause-of-death issue. *See Fritts*, 934 P.2d at 374. But our threshold question must be *what is the conduct at issue? See Greenwood v. Mitchell*, 621 N.W.2d 200, 207–08 (Iowa 2001) (noting importance of distinguishing defendant's fault in running over plaintiff from plaintiff's subsequent failure to mitigate damages). Any "fault" on Brian's part for conduct contributing to his heart attack is simply irrelevant to the question of medical negligence underlying DeMoss's cause of action. Only if Hamilton were found at fault for alleged misdiagnosis or treatment would Brian's *state of health* become potentially relevant to the remaining questions of proximate cause, lost chance of survival and life expectancy. And on those questions, whether his state of health resulted from poor lifestyle choices or bad genes would make no difference.

We conclude that the record did not support a comparative fault instruction here. It was error for the court to permit the jury to compare Brian's fault with Hamilton's on the question of Hamilton's breach of duty of care to his patient.

The court's error in giving a comparative fault instruction does not require reversal, however, because DeMoss has suffered no prejudice. The court's instructions and verdict form called upon the jury to first determine the fault, if any, attributable to Hamilton before proceeding to consider the alleged fault of Brian. The jury found no causal fault on Hamilton's part and, so, in accordance with the court's direction, answered none of the remaining interrogatories. As a result, error, if any, in the instruction dealing with Brian's comparative fault had no effect on the verdict. *Spahr v. Kriegel*, 617 N.W.2d 914, 917 (Iowa 2000); *Ladeburg v. Ray*, 508 N.W.2d 694, 696 (Iowa 1993).

Because no error warranting reversal appears, we affirm the judgment of the district court.

**AFFIRMED.**